UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
WHITELAW ENTERPRISES CO.,

                Plaintiff,

  - against -

AGRENCO MADEIRA COMERCIO
INTERNACIONAL LDA a/k/a AGRENCO MADEIRA
COMERCIO INTERNACIONAL LTD; and
AGRENCO SA,

                Defendants.
---------------------------------------------------------------X

08 CIV 6494

## VERIFIED COMPLAINT

Plaintiff, WHITELAW ENTERPRISES CO. (hereafter referred to as "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendants, AGRENCO MADEIRA COMERCIO INTERNACIONAL LDA a/k/a AGRENCO MADEIRA COMERCIO INTERNACIONAL LTD. ("Agrenco") and AGRENCO SA (hereinafter collectively referred to as Defendants"), alleges, upon information and belief, as follows:

1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of a maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2. At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was at all material times the owner of the motor vessel "BIRTHDAY" (hereinafter the "Vessel").

3. Upon information and belief, Defendant Agrenco was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a place of business located at Avenida do Infante, 50 Funchal, 9004-521, Ilha da Madeira, Portugal.

4. Upon information and belief, Defendant Agrenco SA was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law and was at all material times the alias, alter-ego, paying agent, joint venturer and/or affiliate of Defendant Agrenco.

5. By a charter party dated June 11, 2008 Plaintiff chartered the Vessel to Agrenco for "one Time Charter Trip. . . via Brazil to China/South Korea/ P. Island/Japan Range."

6. Plaintiff delivered the Vessel into the service of Agrenco on or about June 25, 2008 and has at all times fully performed its duties and obligations under the charter party.

7. The charter party obligates Agrenco to pay to Plaintiff hire for the vessel every 15 days in advance.

8. Furthermore, the charter party obligates Agrenco to pay to Plaintiff a ballast bonus in the amount of $1,625,000.00.

9. The charter party provides for a daily hire rate of $75,000, including overtime.

10. Agrenco failed to pay hire in the amount of $1,696,822.95 due and owing to Plaintiff in breach of the charter party.

11. Agrenco failed to pay the full amount of the ballast bonus ($1,625,000.00) due and owing to Plaintiff in breach of the charter party. A partial payment was made in the amount of $960,000.00, leaving a balance of $665,000.00 due and owing to Plaintiff.

12. In addition, Agrenco failed to pay Plaintiff for the bunkers consumed while the Vessel was on charter and for various expenses/general disbursements which are for Agrenco's account under the charter party including, but not limited to, communication, victualling and entertainment expenses, in breach of the charter party.

13. Pursuant to clauses 5 and 37 of the charter party, Plaintiff sent Agrenco an anti-technicality notice, advising Agrenco that it would withdraw the Vessel from the charter by close of business July 17, 2008 if the outstanding hire was not paid in full.

14. The anti-technicality period elapsed and Agrenco still failed to pay the hire and other amounts due and owing under the charter party.

15. Plaintiff's conduct in failing to pay hire, the ballast bonus and/or other expenses, after being given due time to correct such defect constitutes a repudiatory breach of the charter party.

16. After Agrenco repudiated the charter party by failing to pay the amounts due thereunder, Plaintiff withdrew the Vessel and sent Agrenco notice thereof.

17. In its notice to Agrenco, Plaintiff reserved its rights for unpaid hire, damages for breach of the charter party and any and all related as well as consequential costs, expenses and losses.

18. In addition to the hire, ballast bonus and expenses which remain outstanding, as a result of Agrenco's breach of the charter party, Plaintiff will suffer damages for lost earnings in the approximate amount of $225,000.00.

19. After withdrawing the Vessel, Plaintiff took steps to mitigate its losses.

20. Thus, the Vessel was re-let to another charterer. The Vessel begins the mitigation charter on July 21, 2008.

21. However, between the withdrawal of the Vessel and the beginning of the new charter, Plaintiff lost 3 days of hire at the rate of $75,000.00 per day. This is hire that Plaintiff would have otherwise earned had Agrenco not breached and/or repudiated the charter party. Plaintiff reserves its right to increase the damages asserted to take account of additional losses.

22. As set forth above, as a result of Agrenco's breach of the charter party, as best as can be estimated, Plaintiff has sustained damages in the total principal amount of $2,699,993.17, exclusive of interest, arbitration costs and attorneys fees. *Please find attached hereto as Exhibit "1" a breakdown of Plaintiff's claim.*

23. Pursuant to the charter party, disputes between the parties are to be submitted to arbitration in London subject to English law.

24. Plaintiff will initiate arbitration in London after the commencement of this action and jurisdiction is obtained over Defendant(s).

25. This action is brought in order to obtain jurisdiction over Defendant(s) and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

26. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | | |
|---|---|---|---|
| A. | Principal claim: | | |
| | Hire: | | $1,696,822.95 |
| | Ballast bonus: | | $ 665,000.00 |
| | Bunkers consumed while under Agrenco's orders: | $ | 75,039.00 |
| | Disbursements: | $ | 38,131.22 |
| | Loss of earnings: | $ | 225,000.00 |
| B. | Estimated interest on claim- 3 years at 7.0%, compounded quarterly: | $ | 624,884.57 |
| C. | Estimated arbitration costs: | $ | 50,000.00 |
| D. | Estimated attorneys' fees and expenses: | $ | 150,000.00 |
| Total: | | | $3,524,877.74 |

27.     Defendant Agrenco SA is the alter-ego of Defendant Agrenco because it dominates and disregards Agrenco's corporate form to the extent that Agrenco SA is actually carrying on Agrenco's business and operations as if the same were its own, or vice versa.

28.     Upon information and belief, Defendant Agrenco is a shell-corporation through which Defendant Agrenco SA conducts its business, or vice versa.

29.     Upon information and belief, Defendant Agrenco has no separate, independent identity from Defendant Agrenco SA.

30.     Upon information and belief, Agrenco SA uses Agrenco as a "chartering arm" or "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations and in particular its vessel charters.

31.     It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

32.     Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

5

33. Upon information and belief, Agrenco SA makes payments on Agrenco's behalf where Agrenco SA has absolutely no contractual obligation to Agrenco's creditors.

34. Upon information and belief, Agenco SA made the only payment to Plaintiff under the subject charter party where Agrenco SA had absolutely no contractual obligation to do so.

35. Furthermore, upon information and belief, Agrenco SA referred to itself as charterer in communications with Plaintiff even though Agrenco was the only company named as charterer in the charter party.

36. Upon information and belief, Agrenco SA exercises control over Agrenco's accounts and business operations.

37. Upon information and belief, Agrenco SA and Agrenco commingle funds.

38. Based on the foregoing, as well as other activities, Agrenco SA and Agrenco should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Agrenco SA susceptible to attachment and/or restraint for the debts of Agrenco.

39. By virtue of the foregoing, Agrenco SA is properly considered a party to the subject contract as the trade name, alias, alter ego and/or paying agent of Defendant Agrenco.

40. In the further alternative, Defendants are partners and/or joint venturers.

41. In the further alternative, Defendants are affiliated companies such that Agrenco SA is now, or will soon be, holding assets belonging to Agrenco, or vice versa.

42. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during

6

the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant. *See Affidavit of Nancy R. Siegel in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "2."*

43. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendants held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendants and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $3,524,877.74 belonging to, due or being transferred to, from, or for the benefit of the Defendants, including but not limited to such property as may be held, received or transferred in Defendants' name(s) or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be

named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

    C.    That the Court retain jurisdiction to compel the Defendant(s) to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

    D.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

    E.    That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

    F.    That in the alternative this Court enter judgment against the Defendants on the claims set forth herein;

    G.    That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

H. That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated: New York, NY
July 21, 2008

The Plaintiff,
WHITELAW ENTERPRISES CO.

By: /s/ Nancy Siegel
Nancy R. Siegel
Patrick F. Lennon
LENNON, MURPHY & LENNON, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile
nrs@lenmur.com
pfl@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York  )
                   )  ss.:  City of New York
County of New York )

1. My name is Nancy R. Siegel.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:   New York, NY
         July 21, 2008

*/s/ Nancy R. Siegel*
Nancy R. Siegel

EXHIBIT "1"

<u>Re: M/V Birthday – Agrenco – T/C 11/06/08</u>

<u>Claim for un-paid hire, damages for breach of the Charter Party and any and all related and consequential costs, expenses and losses</u>

////////////////////////////////////////////////////////////////////////////////

1. Hire due:

    - Delivery date/time GMT: 25/06/08, 09:00
    - Withdrawal date/time GMT: 17/07/08, 23:59
    Net hire days: 22,624306 x USD 75,000 (daily hire)

Total Net Hire Due: USD 1,696,822.95

////////////////////////////////////////////////////////////////////////////////

2. Ballast Bonus:

- Agreed: USD 1,625,000
- Remitted (on 02/07/08): USD 960,000

Total Outstanding Ballast Bonus: USD 665,000

////////////////////////////////////////////////////////////////////////////////

3. Bunkers supplied by Owners and consumed during the vessel's stay at Paranagua under Charterers' orders, at C/P prices:

- Fuel Oil: USD 35,175
- Diesel Oil: USD 39,864

Total: USD 75,039

////////////////////////////////////////////////////////////////////////////////

4. Disbursement Accounts:

USD 38,131.22

////////////////////////////////////////////////////////////////////////////////

5. Loss of earnings:

    - Withdrawal date/time GMT: 17/07/08, 23:59
    - Delivery to new Charterers: 21/07/08, 00:01
Net hire days lost: 3          x USD 75,000 (daily hire)

Total Net Hire Lost: USD    $225,000.00

////////////////////////////////////////////////////////////////////////////////

Grand Total: USD   $2,699,993.17

EXHIBIT "2"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WHITELAW ENTERPRISES CO.,

          Plaintiff,

    - against -

AGRENCO MADEIRA COMERCIO
INTERNACIONAL LDA a/k/a AGRENCO MADEIRA
COMERCIO INTERNACIONAL LTD; and
AGRENCO SA,

          Defendants.
-------------------------------------------------------------X

08 Civ. _____

### AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut )
                    ) ss: SOUTHPORT
County of Fairfield )

Nancy R. Siegel, being duly sworn, deposes and says:

1. I am a member of the Bar of this Court and represent the Plaintiff herein. I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANTS ARE NOT PRESENT IN THE DISTRICT

2. I have attempted to locate the Defendants, AGRENCO MADEIRA COMERCIO INTERNACIONAL LDA a/k/a AGRENCO MADEIRA COMERCIO INTERNACIONAL LTD. and AGRENCO SA, within this District. As part of my investigation to locate the Defendants within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did

not find any listing for the Defendants. Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration(s) for the Defendants.

3. I submit based on the foregoing that the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4. Upon information and belief, the Defendants have, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendants.

5. This is Plaintiff's first request for this relief made to any Court.

**PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER**

6. Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy R. Siegel, Coleen A. McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold property of, for or on account of, the Defendants.

7. Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendants.

8.  To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

### PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.  Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

### PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10. Further, in order to avoid the need to physically serve the garnishees/banks daily and repetitively, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service to be further deemed effective through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

## PRAYER FOR RELIEF TO TEMPORARILY SEAL CASE

11. Upon information and belief, it is the practice of many law firms in the maritime bar to review the daily electronic docket sheet of the Southern District of New York for all maritime actions filed in the district and inform the defendant(s) named therein of any Ex Parte Orders of Attachment pending against them, thus defeating the purpose of the "Ex Parte" application.

12. Defendant(s) and/or companies related or affiliated with the Defendant(s) named in this case are known to monitor the docket and, in response to such monitoring, in a different case, have contacted an attorney at this firm **less than 24 hours after the case was filed and well before the attachment order was even issued.**

13. Upon information of belief, it is the practice of certain publications, specifically Tradewinds, to publish the names of defendants named in Ex Parte Orders of Attachment, thus further defeating the purpose of the "Ex Parte" application.

14. Upon information and belief, Tradewinds has very recently publicized the names of parties in Rule B proceedings, the amount of the attachments, and other details of the actions, thereby further defeating the purpose of the "Ex Parte" application.

15. The Courts within the Southern District of New York have an interest in preserving the efficacy of the Ex Parte Orders issued therein.

16. The above interest supersedes the interest in maintaining a completely public docket, especially given that the public's access will only be limited temporarily until assets are attached and notice of attachment has been provided to the Defendants.

17. Indeed, the public's access to Ex-Parte Orders of Maritime Attachment defeats their entire purpose, by depriving Plaintiffs of the element of surprise and potentially allowing

Defendants to re-route their funds to avoid the attachment, thus making the attachment remedy hollow.

18. For the foregoing reasons, Plaintiff requests that the Court issue an Order temporarily sealing the court file in this matter, including the Verified Complaint and all other pleadings and Orders filed and/or issued herein until further notice of this Court or notification to the clerk that property has been attached.

19. This request is narrowly tailored to meet Plaintiff's needs. Once property is attached, the case should be unsealed, as the interest underlying sealing the case will have been largely eliminated.

Dated:   July 21, 2008
         Southport, CT

_____
Nancy R. Siegel

Sworn and subscribed to before me
this 21st day of July, 2008.

_____
Notary Public

-5-